IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| SCOTT L. WATTS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) CIVIL ACTION |
| v. | ) |
| | ) No. 07-4032-SAC-JTR |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |
| _____ | ) |

REPORT AND RECOMMENDATION

Plaintiff seeks review of a final decision of the Commissioner of Social Security (hereinafter Commissioner) denying disability insurance benefits (DIB) and supplemental security income (SSI) under sections 216(i), 223, 1602 and 1614(a)(3)(A) of the Social Security Act. 42 U.S.C. §§ 416(i), 423, 1381a, and 1382c(a)(3)(A)(hereinafter the Act). The matter has been referred to this court for a report and recommendation. The court recommends the Commissioner's decision be REVERSED and judgement be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) REMANDING the case for further proceedings.

I.   Background

Plaintiff's applications for DIB and SSI were denied initially and upon reconsideration. (R. 20, 29-32). Plaintiff

sought and received a hearing before an Administrative Law Judge.
(R. 20, 53-54, 420-59).  At the hearing, plaintiff was
represented by an attorney, and testimony was taken from
plaintiff, plaintiff's former wife, plaintiff's mother, and a
vocational expert.  (R. 20, 421).  Shortly thereafter, ALJ Guy E.
Taylor issued a decision in which he found plaintiff is not
disabled within the meaning of the Act and regulations.  (R. 20-
27).

        The ALJ found plaintiff has bipolar disorder which is
"severe," but "not 'severe' enough to meet or medically equal,
either singly or in combination, one of the impairments" in the
Listing of Impairments.  (R. 21).  He found plaintiff's
allegations of disabling symptoms not credible, found that
plaintiff's "substance abuse is not a contributing factor
material to" the determination of disability (R. 23), determined
he could not give great weight to the opinions of plaintiff's
treating psychiatrist, found the testimony of plaintiff's mother
and ex-wife not credible, and assessed plaintiff's residual
functional capacity (RFC).  (R. 22-24).  He determined plaintiff
has no physical limitations but is limited to "simple, routine,
repetitive job tasks where he would not have frequent or
prolonged contact with co-workers, supervisors or the public."
(R. 24)(noting that plaintiff "has no restrictions in activities
of daily living, moderate difficulties in social functioning,

-2-

mild to moderate difficulties in maintaining concentration, persistence or pace, and no episodes of decompensation of extended duration.").

In light of the vocational expert's testimony, the ALJ found that plaintiff is unable to perform his past relevant work, but that he is able to perform other work existing is significant numbers in the economy, such as work as a laundry worker, a packager, or a light or sedentary assembler. (R. 25). Therefore, he concluded plaintiff is not disabled within the meaning of the Act, and denied the applications. (R. 26).

Plaintiff disagreed with the decision, submitted additional evidence, and sought review by the Appeals Council. (R. 393-419). The Appeals Council made the additional evidence a part of the administrative record, but denied plaintiff's request for review. (R. 9-12). Therefore, the ALJ's decision is the final decision of the Commissioner. (R. 9); Blea v. Barnhart, 466 F.3d 903, 908 (10th Cir. 2006). Plaintiff now seeks judicial review of the decision.

## II.  Legal Standard

The court's review is guided by the Act.  42 U.S.C. §§ 405(g), 1383(c)(3).  Section 405(g) provides, "The findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  The court must determine whether the factual findings are supported by substantial evidence in the

-3-

record and whether the ALJ applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). Substantial evidence is more than a scintilla, but less than a preponderance, it is such evidence as a reasonable mind might accept to support a conclusion. Zoltanski v. F.A.A., 372 F.3d 1195, 1200 (10th Cir. 2004); Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988). The court may "neither reweigh the evidence nor substitute [it's] judgment for that of the agency." White, 287 F.3d at 905 (quoting Casias v. Sec'y of Health & Human Serv., 933 F.2d 799, 800 (10th Cir. 1991)); Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005). The determination of whether substantial evidence supports the Commissioner's decision, however, is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

An individual is under a disability only if that individual can establish that he has a physical or mental impairment which prevents him from engaging in substantial gainful activity and is expected to result in death or to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d). The claimant's impairments must be of such severity that he is not only unable to perform his past relevant work, but cannot, considering his

-4-

age, education, and work experience, engage in any other substantial gainful work existing in the national economy.   Id.

The Commissioner has established a five-step sequential process to evaluate whether a claimant is disabled.   20 C.F.R. §§ 404.1520, 416.920 (2005); Allen v. Barnhart, 357 F.3d 1140, 1142 (10th Cir. 2004); Ray, 865 F.2d at 224.   "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988).

In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether he has severe impairments, and whether the severity of his impairments meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).   Id. at 750-51.   If plaintiff's impairments do no meet or equal the severity of a listing, the Commissioner assesses claimant's RFC.   20 C.F.R. §§ 404.1520, 416.920.   This assessment is used at both step four and step five of the process.   Id.

After assessing claimant's RFC, the Commissioner evaluates steps four and five--whether the claimant can perform his past relevant work, and whether he is able to perform other work in the national economy.   Williams, 844 F.2d at 751.   In steps one through four the burden is on claimant to prove a disability that

prevents performance of past relevant work.  Dikeman v. Halter,
245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751
n.2.  At step five, the burden shifts to the Commissioner to show
other jobs in the national economy within plaintiff's capacity.
Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

Plaintiff claims the ALJ erred in evaluating the severity of
plaintiff's mental impairment, in determining whether plaintiff's
condition meets or equals the severity of a Listed Impairment, in
weighing the opinions of plaintiff's treating mental health
providers, and in evaluating the credibility of plaintiff's
allegations of disabling symptoms.  Plaintiff claims that as a
result of the above errors, the ALJ assessed an RFC which is not
supported by substantial evidence and consequently erred in
relying upon answers to hypothetical questions which were based
upon the erroneous RFC.  The Commissioner argues that the ALJ
properly evaluated plaintiff's bipolar disorder at step two and
step three of the sequential evaluation process, properly
evaluated the credibility of plaintiff's allegations, properly
weighed the opinions of the mental health providers, and assessed
an RFC which is supported by substantial evidence in the record.
The Commissioner concludes that it was proper for the ALJ to rely
upon the vocational expert's answers to hypothetical questions
based upon the RFC assessed.  The court finds that the
Commissioner improperly evaluated plaintiff's mental impairment

and improperly evaluated the opinions of plaintiff's mental health care providers.  Remand is necessary for the Commissioner to correct these errors.  The court begins with consideration of the ALJ's evaluation of plaintiff's mental impairment.

## III. Evaluation of Bipolar Disorder

### A.   The Parties' Arguments and the ALJ's Findings

Plaintiff claims the ALJ completed a Psychiatric Review Technique assessment but did not properly support his Part B findings with substantial evidence from the record.  The Commissioner argues that the ALJ found no restrictions in activities of daily living; moderate difficulties in social functioning; mild to moderate difficulties in maintaining concentration, persistence, or pace; and no episodes of decompensation; and that these findings are supported by substantial evidence in the record.

The ALJ found that plaintiff's only "severe" impairment is bipolar disorder.  (R. 21).  He stated his RFC assessment as follows:  "Accordingly, after careful consideration of the above evidence, the undersigned finds claimant retains the following residual functional capacity: He has no physical limitations. Mentally and emotionally, he is limited to simple, routine, repetitive job tasks where he would not have frequent or prolonged contact with co-workers, supervisors or the public." (R. 24).  In footnote 1, the ALJ added:  "He has no restrictions

-7-

of activities of daily living, moderate difficulties in social
functioning, mild to moderate difficulties in maintaining
concentration, persistence or pace, and no episodes of
decompensation of extended duration." (R. 24, n.1).

### B.   The Applicable Standard

The Commissioner has promulgated a Psychiatric Review
Technique (PRT) for evaluating mental impairments in a disability
case. 20 C.F.R. §§ 404.1520a, 416.920a. The Listings include
criteria for evaluating nine diagnostic categories of mental
impairments including "affective disorders"--Listing 12.04. 20
C.F.R., Pt. 404, Subpt. P, App. 1 §§ 12.00, 12.02-12.10.
Affective disorders are evaluated by considering criteria
relating to three syndromes: depressive syndrome, manic
syndrome, and bipolar syndrome. Id. at § 12.04A. The presence
of a particular syndrome is substantiated by application of the
criteria in Listing 12.04A. Id. at § 12.00A. Once the presence
of an affective disorder has been determined by application of
§ 12.04A, the severity of that disorder is measured by assessing
limitations in each of four functional areas: activities of
daily living; social functioning; concentration, persistence, or
pace; and episodes of decompensation. Id. §§ 404.1520a(c)
416.920a(c). After rating the degree of limitation in each
functional area, the Commissioner determines the severity of
plaintiff's mental impairments at step two and step three of the

-8-

sequential evaluation process . <u>Id.</u> §§ 404.1520a(d),
416.920a(d).

When the first three functional areas are rated as "none" or
"mild," and the fourth area is rated as "none," the agency will
conclude at step two of the sequential evaluation process that
plaintiff's mental impairments are not severe "unless the
evidence otherwise indicates that there is more than a minimal
limitation in [plaintiff's] ability to do basic work activities."
<u>Id.</u> §§ 404.1520a(d)(1), 416.920a(d)(1).  If the mental
impairments are severe, the technique requires an evaluation of
whether the impairment meets or equals a listed impairment by
comparing the step two findings and the medical evidence with the
criteria of the listings.  <u>Id.</u> §§ 404.1520a(d)(2),
416.920a(d)(2).

At step three of the sequential evaluation process, the
Commissioner will determine that a claimant meets or equals the
criteria of a listing for affective disorder, if the criteria of
§ 12.04B (the "B" criteria) or § 12.04C (the "C" criteria) are
satisfied.  20 C.F.R., Pt. 404, Subpt. P, App. 1 § 12.00A.  The
criteria of § 12.04B are met if a claimant has a "marked"
limitation in two of the first three functional areas, or if a
claimant has a "marked" limitation in one of the first three
functional areas and in the fourth functional area has repeated
episodes of decompensation, each of extended duration.  <u>Id.</u> at

-9-

§ 12.04B.  Section 12.04C provides alternative criteria whereby the affective disorder listing may be met or equaled even if the "B" criteria are not met.  Id. at 12.00A, 12.04C.  Plaintiff "has the burden at step three of demonstrating, through medical evidence, that his impairments 'meet all of the specified medical criteria' contained in a particular listing." Riddle v. Halter, No. 00-7043, 2001 WL 282344 at *1 (10th Cir. Mar. 22, 2001) (quoting Sullivan v. Zebley, 493 U.S. 521, 530 (1990) (emphasis in Zebley)).

In determining whether a claimant's impairment meets or equals a Listed Impairment at step three, an ALJ must identify the relevant listings considered and set out specific findings and reasons for finding whether plaintiff's impairments meet or equal those listings.  Clifton v. Chater, 79 F.3d 1007, 1009 (10th Cir. 1996); Bolan v. Barnhart, 212 F. Supp. 2d 1248, 1258 (D. Kan. 2002).  Where an ALJ fails to identify the relevant listings or to set out specific findings and reasons, such a "bare conclusion is beyond meaningful judicial review." Clifton, 79 F.3d at 1009.  If the Commissioner determines that plaintiff's mental impairments do not meet or equal a listing at step three, she will then assess plaintiff's RFC.  Id. §§ 404.1520a(d)(3), 416.920a(d)(3).

The regulations require that an ALJ will document application of the PRT in his decision.  20 C.F.R.

§§ 404.1520a(e), 416.920a(e).  "The decision must show the
significant history, including examination and laboratory
findings, and the functional limitations that were considered in
reaching a conclusion about the severity of the mental
impairment(s)."  Id. at §§ 404.1520a(e)(2), 416.920a(e)(2).

### C.   The Court's Analysis

Here, the ALJ failed to properly apply the psychiatric
review technique to evaluate plaintiff's bipolar disorder.  In
his step two and step three analyses, he did not even mention the
psychiatric review technique or the four functional areas which
are to be considered in application of the technique.  As quoted
above, when he stated his mental RFC assessment the ALJ inserted
a footnote which stated his conclusions regarding the four
functional areas.  Nowhere in the decision did he explain the
evidence which led him to reach those conclusions.

In evaluating plaintiff's credibility, the ALJ stated that
plaintiff's testimony that he does very little during the day is
inconsistent with his June 2003 daily living questionnaire in
which plaintiff acknowledged living alone, dusting, cleaning
dishes, doing laundry, going shopping, driving, taking walks, and
leaving home.  (R. 24).  The ALJ asserted that this "is a nearly
normal level of daily activity inconsistent with disability."
Id.  The court does not agree that the 2003 questionnaire is
inconsistent to any great extent with plaintiff's hearing

testimony, or establishes by itself that plaintiff is not
disabled.  Hamlin v. Barnhart, 365 F.3d 1208, 1221 (10th Cir.
2004)(minimal daily activities do not constitute substantial
evidence that plaintiff does not suffer disabling symptoms);
Thompson v. Sullivan, 987 F.2d 1482, 1488 (10th Cir. 1993); Frey
v. Bowen, 816 F.2d 508, 516-17 (10th Cir. 1987); Talbot v.
Heckler, 814 F.2d 1456, 1462-63 (10th Cir. 1987); Broadbent v.
Harris, 698 F.2d 407, 413 (10th Cir. 1983).

    Moreover, that is the only mention of daily activities in
the decision, and the ALJ provided no explanation how this
evidence establishes that plaintiff has no restrictions in the
functional area of activities of daily living.  It may be that
such activities demonstrate no restrictions, but the court is
mindful that the record demonstrates and the ALJ found that
plaintiff has bipolar disorder.  The ALJ must relate the daily
activities to plaintiff's impairment and explain how the evidence
led him to conclude that the impairment produces no limitations
in activities of daily living.  The ALJ did not do so.

    That is the only discussion in the decision which might be
construed to relate the record evidence to the ALJ's findings
regarding the four mental functional areas.  The Commissioner
argues that the ALJ's findings regarding the four functional
areas are supported by evidence in the record, and cites to
record evidence to support his assertion.  However, with the

exception of the daily activities questionnaire discussed above, none of the evidence cited in the Commissioner's brief was cited or discussed by the ALJ.  Were the court to find that substantial evidence in the record supports the findings, it would be necessary for the court to search the record and provide a rationale which the ALJ did not provide.  It is not proper for the court to weigh the evidence in the first instance.  Clifton, 79 F.3d at 1009(citing Cagle v. Califano, 638 F.2d 219, 220 (10th Cir. 1981)).

Furthermore, an ALJ's decision should be evaluated based solely on the reasons stated in the decision.  Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004).  A decision cannot be affirmed on the basis of appellate counsel's post hoc rationalizations for agency action.  Knipe v. Heckler, 755 F.2d 141, 149 n.16 (10th Cir. 1985).  A reviewing court may not create post hoc rationalizations to explain the Commissioner's treatment of evidence when that treatment is not apparent from the Commissioner's decision.  Grogan v. Barnhart, 399 F.3d 1257, 1263 (10th Cir. 2005); see also, Allen v. Barnhart, 357 F.3d 1140, 1145 (10th Cir. 2004)(By considering evidentiary matters not considered by the ALJ, a court risks violating the general rule against post hoc justification of administrative action).

Perhaps because he failed to properly explain his step two evaluation of plaintiff's bipolar disorder, the ALJ also erred in

-13-

his step three evaluation.  At step three, the ALJ determined
that plaintiff's bipolar disorder was not so severe as to meet or
equal the severity of any listed impairment.  (R. 21).  Although
the ALJ did not identify any particular listed impairment or
impairments he had considered, one might argue that the ALJ
considered Listing 12.04A(3) for bipolar syndrome because bipolar
disorder was the only impairment mentioned in the decision, and
because the ALJ found bipolar disorder as plaintiff's only severe
impairment at step two.  While this is a natural conclusion which
might be reached in a normal case, the ALJ here stated that
plaintiff's bipolar disorder does not meet or equal "either
singly or in combination" any listed impairment.  The court is
unable to ascertain which combination of impairments the ALJ may
have been considering and is, therefore, unable to determine what
listings, if any, were considered in addition to or in lieu of
the listing for bipolar syndrome.  Clifton, 79 F.3d at 1009.
Because the ALJ did not identify the specific listings
considered, the court cannot determine whether the specific
criteria of those listings were considered, and whether the ALJ
properly found that the criteria are not met in the circumstances
of this case.

     The ALJ stated he could not find any listing was met or
equaled because plaintiff's attorney had not presented persuasive
evidence or arguments of listing level severity and because:

there is no evidence of frequent hospitalization or
emergency room visits, a loss of adaptive functioning,
debilitating effects of chronic illness, or other
signs, symptoms or findings of the frequency or
severity required by the listings.

(R. 22).  The court notes that none of the quoted reasons relate

to the "B" or "C" criteria for Listing 12.04, none of the reasons

relate to the regulation which explains application of the

psychiatric review technique, and only "loss of adaptive

functioning" relates with any specificity to the introductory

materials in Listing 12.00 regarding assessment of severity of

mental disorders.  Moreover, the decision does not point to

record evidence which supports the ALJ's conclusion.

The Commissioner argues that the ALJ's findings (in footnote

1) regarding the four mental functional areas "makes abundantly

clear, [that] Plaintiff does not meet the "B" criteria, which is

less severe than the "C" criteria," and therefore, the decision

is clear that plaintiff's condition does not meet or equal a

listed impairment.  (Comm'r Br. 7).  As the Commissioner argues,

it is clear from footnote 1 that the ALJ's evaluation of the four

mental functional areas leads invariably to the conclusion that

plaintiff does not meet the "B" criteria of Listing 12.04.

However, as the court found above, the ALJ did not properly

explain his application of the psychiatric review technique to

evaluation of the four mental functional areas.  Therefore, the

step three finding in that regard suffers from the same problems as the step two finding.

Moreover, the Commissioner does not cite any authority--administrative, medical, or legal--for the proposition that the "B" criteria are <u>less severe</u> than the "C" criteria.  Such an assertion implies that in every case where it can be determined that a claimant does not meet the "B" criteria, that claimant cannot meet the "C" criteria.  Such a situation renders the "C" criteria mere surplusage to the disability evaluation process, and lacking clear evidence or authority the court will not find that the "B" criteria are always less severe than the "C" criteria.  <u>See</u>, 20 C.F.R., Pt. 404, Subpt. P, App. 1 § 12.00A ("We will assess the paragraph C criteria only if we find that the paragraph B criteria are not satisfied.").  Remand is necessary for the Commissioner to properly apply the psychiatric review technique at step two and step three of the evaluation process.

**IV.   Evaluation of the Opinions of Mental Health Care Providers**

Because evaluation of the severity of plaintiff's bipolar disorder at step two and step three of the sequential evaluation process necessarily requires an evaluation of the medical evidence--including medical opinions relating to plaintiff's impairment--the court will review the Commissioner's evaluation of the opinions of plaintiff's mental health care providers.

-16-

Plaintiff claims that the ALJ erred in weighing the opinions of his mental health care providers.  He claims the ALJ discounted the treating psychiatrist's opinion because it was inconsistent with the reports and observations of plaintiff's nurse practitioner, but that the ALJ failed to recognize that two of the "opinions" of the psychiatrist were in fact signed by the nurse practitioner.  He claims the ALJ's discussion of the psychiatrist's opinion is merely "boilerplate," and does not reflect proper weighing of the opinion as required by the regulations and case law.  In his reply brief, plaintiff argues that the opinion of neither the psychiatrist nor the nurse practitioner was weighed in accordance with the regulations and Soc. Sec. Ruling (SSR) 06-3p.  The Commissioner argues that the ALJ properly weighed the psychiatrist's opinion and discounted it because plaintiff only had minimal, infrequent contacts with the psychiatrist, because the opinions were only "check-block" forms not supported by objective medical evidence, and because the opinions are inconsistent with progress notes of the nurse-practitioner.  He argues that the nurse practitioner's assessment was also properly discounted because it was on "check-block" forms and because it is inconsistent with her treatment notes.

The ALJ stated that he had considered all medical opinions in making his RFC assessment of plaintiff.  (R. 24).  He specifically discussed the opinion of plaintiff's treating

-17-

psychiatrist, Dr. Leeson, noting that Dr. Leeson stated
plaintiff's symptoms and limitations would preclude employment,
that racing thoughts and flights of ideas would interfere with
ability to focus, and that crying spells and anxiety would be a
barrier to working with co-workers and the public.  (R. 23).  He
explained his evaluation of Dr. Leeson's opinion:

> The undersigned has specifically considered the reports
> of record from claimant's treating psychiatrist, Dr.
> Leeson, which either state claimant is disabled or
> contain "check-mark" lists setting forth symptoms and
> limitations that are ordinarily disabling.  (Exs. 8F,
> 9F [(R. 300-04)])[1]  However, the undersigned cannot
> give great weight to these reports as they pertain to
> the claimant's ability to do work because they are
> inconsistent with the reports and observations of
> claimant's treating nurse practitioner who has seen
> claimant much more frequently than Dr. Leeson and whose
> notes describe a much higher level of functioning than
> Dr. Leeson.  In addition, the "check-box" form
> completed by Dr. Leeson does not contain any narrative
> discussion, does not cite any signs, symptoms or
> findings to support its conclusions; and, is therefore
> completely conclusory in nature and not a persuasive
> source on which to base any determination as to
> claimant's level of functioning.

(R. 24).  The decision contains no discussion of the weight given
to the nurse practitioner's treatment notes and opinions, and no
discussion of the three psychiatric review technique forms (PRTF)
or of the three mental RFC assessment forms which were completed

---

[1]The court notes that the record also contains Exhibit 10F
(R. 305-07) which is a "Mental Residual Functional Capacity
Assessment" form with Dr. Leeson's signature block and signed by
nurse practitioner White as was Exhibit 9F.  Exhibit 8F (R. 300)
is a letter addressed "To Whom It May Concern" and signed by Dr.
Leeson.

-18-

by state agency consultants on Nov. 19, 2001, Apr. 10, 2003, and
Aug. 21, 2003.  (R. 257-99, 308-30).

The ALJ found that Dr. Leeson's opinions are inconsistent
with the nurse practitioner's notes and that the nurse
practitioner's notes describe a much higher level of functioning
than Dr. Leeson.  Yet, he did not cite evidence demonstrating the
inconsistencies or demonstrating the differences in level of
functioning.  Moreover, he did not mention that the "check-box"
forms, Exhibits 9F and 10F, contain Dr. Leeson's signature block
but are in fact signed by nurse practitioner White.  It may be
appropriate in certain circumstances to accept the forms as Dr.
Leeson's opinion although they were signed by nurse practitioner
White.  However, the facts (that the ALJ treated Exhibit 9F as
Dr. Leeson's opinion, did not mention Exhibit 10F, and did not
explain why he treated the form signed by nurse practitioner
White as the opinion of Dr. Leeson) leave the court unable to
determine exactly how the ALJ weighed the opinions.  Perhaps the
ALJ noticed that Ex. 9F was signed by nurse White but treated it
as Dr. Leeson's opinion because nurse White works under Dr.
Leeson's supervision and the form has Dr. Leeson's signature
block.  If that is the case, it is not clear why the ALJ didn't
also mention Ex. 10F and accept it as Dr. Leeson's opinion.
Perhaps, on the other hand, the ALJ did not notice that Ex. 9F
had been signed by nurse White, and unintentionally treated it as

Dr. Leeson's opinion.  Such a case is consistent with not accepting or discussing Ex. 10F as Dr. Leeson's opinion because it was signed by the nurse practitioner.  The court is unable to determine from the decision whether the ALJ was aware of the ambiguities created by nurse White signing Exs. 9F and 10F. Therefore, the court is unable to determine whether the ALJ properly weighed the medical opinions.  Remand is necessary for the Commissioner to resolve the ambiguities and explain the weight assigned to each opinion.

This case illustrates an issue which appears with ever-increasing frequency in disability cases.  An increasing number of claimants have their medical care provided by health care providers who are not "acceptable medical sources"--nurse practitioners, physician's assistants, social workers, and therapists.  Recognizing this reality, the Commissioner promulgated SSR 06-3p after the ALJ issued his decision in this case.  West's Soc. Sec. Reporting Serv., Rulings 327-34 (Supp. 2007).  In that ruling, the Commissioner noted:

> With the growth of managed health care in recent years and the emphasis on containing medical costs, medical sources who are not "acceptable medical sources," such as nurse practitioners, physician assistants, and licensed clinical social workers, have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists.  Opinions from these medical sources, who are not technically deemed "acceptable medical sources" under our rules, are important and should be evaluated on key issues such as

impairment severity and functional effects, along with
the other relevant evidence in the file.

Id. Rulings, 330-31.  On remand therefore, regardless of the
Commissioner's determination whether Exhibits 9F and 10F
constitute the opinion of Dr. Leeson or of nurse practitioner
White, the opinions must be considered and weight must be
assigned based upon an evaluation of the opinions in accordance
with SSR 06-3p.

The court makes a final comment regarding evaluation of
medical opinions.  The record reveals that the opinions of the
state agency consultants are markedly different than the opinions
of Dr. Leeson and nurse White.  Compare Exs. 8F, 9F, 10F with
Exs. 4F, 5F, 6F, 7F, 11F, 12F.  Yet, the ALJ rejected the opinion
of Dr. Leeson and, without a specific finding or discussion,
accepted the opinions of the state agency consultants who merely
reviewed the record in the case.  Moreover, with the exception of
two medical records relating to psychiatric in-patient treatment,
the medical treatment and examination records consist solely of
records from "Wyandot Center for Community Behavioral Healthcare,
Inc." where Dr. Leeson and nurse practitioner White practice.
Thus, the only opinions relating to the nature and severity of
plaintiff's condition are those of Dr. Leeson and nurse
practitioner White, and of the state agency consultants who
merely reviewed the record consisting primarily of notes from Dr.
Leeson and nurse practitioner White.  The decision does not

-21-

contain any discussion or explanation with citation to record evidence why the opinion of the non-examining sources is worthy of greater weight than the opinion of the treating source or of the treating nurse practitioner.  Plaintiff does not argue and the court will not make a finding, but on remand the Commissioner should consider whether this is an appropriate case to procure the services of a consultative examination of plaintiff or at least the services of a medical expert to explain how the record more properly supports the findings of the state agency consultants rather than those of the treating mental health care providers.

A proper application of the psychiatric review technique and proper evaluation of the mental health care providers' opinions must be performed on remand.  These evaluations may affect consideration of the credibility of plaintiff's allegations of disabling limitations.  Therefore, the court will not address plaintiff's arguments regarding the credibility determination. Plaintiff may make these arguments on remand.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision be REVERSED and the case be REMANDED pursuant to the fourth sentence of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion.

Copies of this recommendation and report shall be delivered to counsel of record for the parties.  Pursuant to 28 U.S.C.

§ 636(b)(1), Fed. R. Civ. P. 72(b), and D. Kan. Rule 72.1.4, the parties may serve and file written objections to this recommendation within ten days after being served with a copy. Failure to timely file objections with the court will be deemed a waiver of appellate review.  Hill v. SmithKline Beecham Corp., 393 F.3d 1111, 1114 (10th Cir. 2004).

Dated this 3rd day of January 2008, at Wichita, Kansas.


s/John Thomas Reid
**JOHN THOMAS REID**
**United States Magistrate Judge**